**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TIMOTHY MOORE** | § | **CIVIL ACTION NO.: _____** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **RED ROBIN INTERNATIONAL, INC.** | § | **JURY DEMANDED** |
| | § | |
| **Defendant.** | § | |

_____

**PLAINTIFF'S ORIGINAL COMPLAINT**

_____

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE**:

Plaintiff Timothy Moore ("Mr. Moore" or "Plaintiff") files this Original Complaint for causes of action pleaded below, complaining of and about Defendant Red Robin International, Inc. ("Red Robin" or "Defendant"), and will respectfully show onto the Court as follows:

## I.     PARTIES

1.     Plaintiff Timothy Moore is an individual residing in Harris County, Texas.

2.     Defendant Red Robin International, Inc. is a Nevada corporation with its principal place of business at 6312 S. Fiddlers Green Circle, Suite 200, Greenwood Village, Colorado. It is owned, either directly or indirectly, by Red Robin Gourmet Burgers, Inc. Red Robin International, Inc. operates the restaurants of Red Robin Gourmet Burgers, Inc. Defendant Red Robin International, Inc. may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, Co., 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.      JURISDICTION

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes, namely the Americans with Disabilities Act of 1990 ("ADA/ADAAA"), 42 USC §§ 12102 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), as Defendant discriminated against Plaintiff on the basis of Plaintiff's disability.

4.      This suit further arises under Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e-2(a)(1) (2012).

5.      Additionally, this Court has supplemental jurisdiction over Plaintiff's similar state law claims, pursuant to 28 U.S.C. § 1367, because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy, under Article 3 of the United States Constitution.

6.      Venue is proper in the Southern District of Texas – Houston Division, pursuant to 28 U.S.C. § 1391(a), because this is the judicial district where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## III.      NATURE OF THE ACTION

7.      This action is brought pursuant to, the American with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), Age Discrimination in Employment Act ("ADEA"), and Texas Commission on Human Rights Act ("TCHRA"), on the grounds that Plaintiff was discriminated against because of his disability (detached retina and hemorrhaging in his eye). Red Robin, ultimately, discriminated and harassed Plaintiff while Plaintiff was an employee of Red Robin, which is in violation of the ADA. This action seeks to recover damages caused to Plaintiff by Red Robin's unlawful and discriminatory employment practices, including damages caused by Red Robin's termination of Plaintiff.

8.      This action also seeks to recover damages for Defendant's violation of Title VII and TCHRA. Specifically, Plaintiff complains that Defendant discriminated against him based on his gender (male). Plaintiff also complains that Defendant created a hostile work environment, in which Plaintiff was the target of continuous harassment by Defendant.

9.      Further, this is an action under the ADEA and the TCHRA to correct and recover for unlawful employment practices on the basis of Plaintiff's age, sixty (62) years old, which includes Plaintiff being discriminated against and retaliated against because of his age. *See* 29 U.S.C § 621 et seq.; and Texas Labor Code § 21.001 et seq.

### IV.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.      On April 4, 2018, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination based on disability and FMLA retaliation (Charge No. 460-2018-03268).

11.      Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, dated September 5, 2019.  Plaintiff files this lawsuit within ninety (90) days of receiving the Notice, which was received September 9, 2019. Therefore, this lawsuit is timely filed.

### V.      FACTS

11.      In 2001, Plaintiff began working for Cowboy Red, LLC, as the Vice President of Operations. He was originally a Red Robin franchisee employee. On March 21, 2016, Plaintiff was actively recruited and hired to work directly for Red Robin as a Regional Operations Director (hereinafter referred to as "ROD").

12.      Plaintiff was an exemplary Red Robin franchisee as well as an exemplary employee of the Red Robin franchisee. Aside from Plaintiff having an unblemished record working for Red Robin, he was a loyal, dedicated, and hard-working employee. However, Plaintiff's world was

3

forever changed when he was terminated from his job after more than fifteen (15) years of service, on October 8, 2017.

13.     In Plaintiff's department, there were approximately nine (9) other RODs. The most recent RODs, who were promoted, were all female. Moreover, it is believed that the female RODs promoted were younger than Plaintiff.

14.     Red Robin's policy at the time (referred to as "Women in Excellence") focused strictly on the advancement of females at Red Robin. Amy Jones (hereinafter "Ms. Jones"), the Regional Vice President, was adamant about Red Robin's policy and focused on hiring and promoting females only. Red Robin even outsourced its hiring services by teaming up with "ReferHer" and Ladders. Unfortunately, Ms. Jones' enthusiasm for hiring females was to the detriment of the male Red Robin employees - so much so that males were singled out and received unfavorable treatment. This was very evident in Ms. Jones' treatment of Plaintiff.

15.     It was clear from the very beginning of Plaintiff's employment that he was being treated differently than females and younger employees at Red Robin. In April of 2017, Plaintiff was assigned to assist locations that had been purchased by Red Robin in 2016 that lacked any supervision from the previous ROD. For the next four months Red Robin operated business without any oversight from a ROD. Plaintiff's schedule was set about one (1) month in advance, and he already had seven (7) locations assigned, when Plaintiff was asked to take on both the Killeen and the Austin Red Robin locations. Plaintiff reluctantly agreed despite the increased workload, which he had not anticipated when he was hired. Plaintiff is unaware of any female RODs that had a similarly heavy workload.

16.     In June 2017, Plaintiff had emergency surgery to reattach a torn retina, and Plaintiff spent a few weeks recuperating from it. Plaintiff utilized his vacation and sick time to cover this

period, and still continued to work from home, including (but not limited to) making and taking calls as well as sending and reviewing e-mails. Plaintiff told Ms. Jones everything that had occurred, and Ms. Jones was well aware of his medical issues.

17.     Plaintiff was still assigned the Austin and Killeen locations. Plaintiff did not have a General Manager at the Killeen location. However, Plaintiff was also not able to travel due to his medical restrictions, which he informed Ms. Jones, but he continued to work from home and was available at any time if necessary, by any Red Robin employee. Notably, on July 20, 2017, in recognition Plaintiff's efforts, Ms. Jones sent out an email to the executive team stating that Plaintiff has led his team with a positive impact since Quarter 4 in 2016.

18.     On or about July 27, 2017, Ms. Jones was in Houston and had dinner with Plaintiff as well as with another ROD. During dinner, Ms. Jones continued to ask Plaintiff about not keeping his eye open and asking him why he looked so tired. Plaintiff reminded Ms. Jones that he just had major surgery, that he could not yet see out of his eye, and that he was still having issues with his vision. Ms. Jones did not seem concerned. Instead, she only told Plaintiff that he needed to smile more often.

19.     That same day, Ms. Jones called Plaintiff to inform him that Terri Suhr (hereinafter "Ms. Suhr"), a Red Robin General Manager, complained about not being afforded an opportunity to develop her career within Red Robin. Plaintiff was adamant that there had been ample opportunities provided for her, however, she had not taken advantage of those opportunities. Thereafter, Ms. Jones asked Plaintiff to give up one of his stores. As such, Plaintiff reluctantly said it was fine with him. Consequently, that store went to another female employee, Jackie Scheel. It was apparent that Ms. Jones only seemed to be concerned with promoting females, even though these candidates were unqualified and not fit for any sort of promotion at that time.

20.     On August 1, 2017, Plaintiff underwent another surgery to repair his torn retina. After about one (1) week of recuperating from the surgery, Plaintiff still continued to answer telephone calls and e-mails during his recuperation time. Plaintiff returned to work on August 8, 2017. Again, Plaintiff kept Red Robin informed of his health issues. However, Plaintiff never received the FMLA rights and responsibilities notice from Red Robin.

21.     On August 20, 2017, a meeting was held in California among the RODs and high potential General Managers. At that meeting, Ms. Jones announced that Plaintiff was the most resilient person that she had ever met and that he had a passion for people. Although Ms. Jones further recounted Plaintiff's achievements, she also mentioned his medical issues to all of the individuals at the meeting (without Plaintiff's permission). Ms. Jones further mentioned at least three (3) times that Plaintiff looked "tired."

22.     In September 2017, Ms. Jones held a one-on-one meeting with Plaintiff to influence Plaintiff as he completed his review of Ms. Jones. Ms. Jones wanted to make sure that Plaintiff did not make any disparaging comments on her review that would surprise her.  Ms. Jones sat at the same table as him while he completed his review. Around the same time, during a visit to the office, Ms. Jones complained to Plaintiff about a line check issues and asked about a previous infraction by Ms. Suhr, which had occurred in between Plaintiff's eye surgeries. At that time, Plaintiff was not aware that he could issue write-ups via telephone (especially without a witness), yet Ms. Jones reprimanded him for failing to do so. Shortly after, Plaintiff issued the write-up to Ms. Suhr.

23.     On September 17, 2017, Plaintiff met with Ms. Jones in Killeen to tour the Red Robin store. After they sat down to discuss some issues, it came to Plaintiff's attention that Sagery Ballenger ("Ms. Ballenger") (the Assistant General Manager in Killeen), who had already given

her notice to work for a former ROD, had met with Ms. Jones during this visit. Ms. Ballenger had indicated to Ms. Jones that she was leaving because Plaintiff had not promoted her and because Plaintiff did not inquire about her baby. However, Plaintiff worked with Ms. Ballenger for six weeks prior to her going on leave. Plaintiff did not feel that Ms. Ballenger had shown the initiative or detail needed to perform the work of a General Manager. Therefore, Plaintiff did not promote Ms. Ballenger to the open General Manager position due to performance concerns he had with her.

24.     Ms. Jones was not happy with Plaintiff's statements about Ms. Ballenger. Clearly, Ms. Jones was unhappy about the fact that Plaintiff had not promoted a younger female despite the fact that Ms. Ballenger was not an appropriate fit for the position. Ms. Jones also spoke with another manager, Erika McCubbins "Ms. McCubbins" (a newly hired manager with less than two (2) months experience with Red Robin), who was unhappy about the fact that they had scored an eighty (80) guest satisfaction score ("NPS score") and Plaintiff did not "thank them" for the score. At the time, Plaintiff had only been in charge of the store for about four (4) months and had only visited the store two (2) times. Again, it was clear that Ms. Jones was unhappy that Plaintiff was not being more supportive of Red Robin's younger female employees. Interestingly, Ms. Jones never made those same types of observations or complaints when it came to Red Robin's male General Managers or Assistant General Managers.

25.     On the same day, Ms. Jones told Plaintiff that she was writing him up for, not following up with Ms. Suhr soon enough, and because too many managers quit while working for Red Robin. However, these allegations were wholly untrue. As such, Plaintiff defended himself and told Ms. Jones that in the past year, only one (1) manager quit, and the other managers that she was referring to had left only shortly after Plaintiff took over as ROD. However, Ms. Jones

completely ignored Plaintiff's explanation; and, instead, continued to encourage Plaintiff to sign the write up and "get it over with."

26.     On September 19, 2017, Ms. Jones scheduled a telephone call with Plaintiff. During that telephone call, Ms. Jones abruptly and completely without warning asked Plaintiff for his resignation from Red Robin. Then, Ms. Jones gave two very petty and baseless reasons to support his termination. Plaintiff affirmatively denied all the allegations created by Ms. Jones, but Ms. Jones did not listen and continued to pressure Plaintiff to resign from his position at Red Robin.

27.     As Plaintiff took time to decide what he wanted to do, in regard to Ms. Jones asking him to resign, Ms. Jones offered Plaintiff a severance package. Unmistakably, Ms. Jones revealed her animus that she had against Plaintiff when she gave him an ultimatum that if he did not submit the resignation, then, Ms. Jones would issue him another write-up and would ensure that Plaintiff would not make it at Red Robin for another thirty (30) days. However, Plaintiff continued to work for Red Robin until October 6, 2017. Subsequently, Mr. Moore was terminated on or about October 8, 2017.

28.     Ms. Jones did not follow Red Robin's three (3) step warning process regarding terminating Plaintiff and Ms. Jones also did not utilize Red Robin's Performance Improvement Plan. Moreover, Plaintiff believes that he has been replaced by a younger non-disabled female employee, who also has far less experience than Plaintiff.

29.     It is undeniable that Ms. Jones had a bias against Mr. Moore and that she treated him differently than other similarly situated employees. Based on the differential treatment of Mr. Moore compared to his younger female non-disabled counterparts, as well as Mr. Moore's baseless alleged performance violations as he was having to deal with having multiple surgeries, we strongly believe that there is sufficient evidence of gender discrimination, age discrimination, and

disability discrimination.

## VI. ADA DISABILITY DISCRIMINATION

30.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

31.     Plaintiff hereby asserts that Red Robin's termination of Plaintiff's employment was in direct violation of the American with Disabilities Act (hereinafter referred to as ADA) and Texas law.

32.     Plaintiff is disabled, as defined by the ADA and Texas law. Plaintiff was diagnosed with a detached retina and hemorrhaging in his eye and underwent several surgeries for his condition, as evidenced by Plaintiff's medical records.

33.     As evidenced by Plaintiff's pre- and post-disability personnel records, Plaintiff was clearly qualified to do his job, as he had been successfully performing at Red Robin as a ROD for about two (2) years and was still admirably performing his work while simultaneously dealing with his eye issues.

34.     Plaintiff suffered an adverse employment action in the form of termination, while similarly situated non-disabled employees of Red Robin were allowed to keep their jobs and promoted.

35.     Plaintiff specifically pleads his right to recover punitive damages from the Defendants under the ADA, as Defendants acted with intentional and callous disregard for Plaintiff's federally protected rights. Plaintiff was discriminated against because of his disability status during the entire period of his employment following Plaintiff's diagnosis.

36.     Defendant further failed to engage in a constructive dialogue with Plaintiff to find

accommodations for his disability. Instead of looking for an accommodation that would be reasonable and satisfactory to both Plaintiff and Defendant, Defendant instead, through its agent, commenced looking for any shortcomings in Plaintiff's performance Defendant could find, which culminated in Plaintiff's termination.

## VII. TCHRA DISABILITY DISCRIMINATION

37.      Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

38.      The aforementioned conduct by Defendants constitutes violations of Chapter 21, of the Texas Labor Code (the TCHRA).  *See* Tex. Lab. Code §21.001 *et seq.* Specifically, Defendant has discriminated against Plaintiff because of his disabilities in violation of §§ 21.051 and 21.055 of the Texas Labor Code, which states in relevant part that:

> [a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age, the employer (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee.

39.      Plaintiff's rights were violated when Defendant failed to accommodate for Plaintiff's medical condition, after numerous requests for such accommodation. Plaintiff's rights were violated when he lost promotional and career opportunities because of his disability. Plaintiff's rights were also violated when he was measured unfairly, compared to his non-disabled colleagues with regard to his performance reviews. Additionally, the conduct described herein created a hostile work environment under Texas law.

## VIII. ADEA AGE DISCRIMINATION

40.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

41.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his age, sixty-two (62) years old.

42.     Plaintiff is over forty (40) years old, thus, he is in a protected class. The events leading up to Plaintiff's termination (i.e., essentially a forced resignation) are sufficient to give rise to an inference of age discrimination. Prior to the alleged incident that resulted in Plaintiff's termination, Red Robin had employed him for about two (2) years. During that time, Plaintiff never received a negative review or formal write-up at work. Instead, Plaintiff excelled at his job, which was evident from the multiple praises and recognition that he received from Ms. Jones regarding his performance.

43.     Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's age, sixty-two (62) years old, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

## IX. TCHRA AGE DISCRIMINATION

44.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

45.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his age, sixty-two (62) years old.

46.     Defendant discriminated against Plaintiff in connection with the compensation,

terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's status because of Plaintiff's age, sixty-two (62) years old, in violation of the Texas Labor Code § 21.051 et seq.

## X. TITLE VII GENDER DISCRIMINATION

47.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

48.    Defendant, intentionally engaged in unlawful employment practices involving Plaintiff because of his gender (i.e., male), including discrimination and retaliation.

51.    Plaintiff can demonstrate that he was within a protected class because he is a male. Plaintiff can show that he was qualified for the position, as he competently performed the position of a ROD for nearly two (2) years with no disciplinary record; and, he was the Vice President of Operations for a restaurant franchisee for sixteen (16) years prior to when he was recruited and hired by Red Robin as a ROD. Furthermore, Plaintiff can demonstrate that he was subjected to an adverse employment action on October 6, 2017 when he was effectively terminated by Ms. Jones because of his gender. Lastly, Plaintiff can show that he was replaced by someone outside of his protected class, as Ms. Scheel, who is female, was promoted to the ROD position.

52.    Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of Plaintiff's employment in violation of federal discrimination laws; or, limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's status as an employee because of Plaintiff's gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## XI. TCHRA GENDER DISCRIMINATION

53.      Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

54.      Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his gender (i.e., male).

55.      It is undeniable that at Red Robin, females are heavily prioritized when hiring employees, as is evident by Red Robin's "Women in Excellence" policy and the "ReferHer" Ladders program that Ms. Jones often referenced, and on which she placed great emphasis. In fact, although Ms. Jones constantly asked Plaintiff about hiring and promoting women, she did not have the same vigor regarding hiring male applicants and promoting male employees.

56.      Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affected Plaintiff's status because of Plaintiff's gender (i.e., male), in violation of the Texas Labor Code § 21.051 et seq.

## XII. HOSTILE WORK ENVIRONMENT

57.      Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

58.      Plaintiff was subjected to unwelcome harassment based on his disability when his supervisors continuously questioned his performance, recording every miniscule detail of Plaintiff's performance, and refused Plaintiff's numerous requests for accommodations.

59.      The harassment complained of affected a term, condition or privilege of Plaintiff's employment in that it, among other effects, it affected his ability to succeed at his job and caused

him severe emotional stress.

60.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish and other pecuniary and non-pecuniary losses in the amount to be determined at trial.

## XIII. JURY DEMAND

61.    Plaintiff demands a jury on all issues to be tried in this matter and herein submit the jury fee.

## XIV.  PRAYER

For the reasons above, Plaintiff prays that Defendant be cited to appear and answer herein and that, on final trial, Plaintiff have judgment against Defendant for:

a.  All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendments thereto, including but not limited to back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

b.  Compensatory damages, including, but not limited to, emotional distress;

c.  Past, present, and future physical pain and mental suffering;

d.  Punitive damages;

e.  Reasonable attorneys' fees, as allowed by applicable law (with conditional awards in the event of appeal);

f.  Pre-judgment interest at the highest rate permitted by law;

g.  Post-judgment interest from the date of judgment until paid at the highest rate permitted by law;

h.  Costs of Court; and

i.  Such other and further relief, at law or in equity, to which Plaintiff may be justly

entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully submitted,

kennard law P.C.

_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
S.D. ID No. 713316
Email: alfonso.kennard@kennardlaw.com

**ATTORNEYS FOR PLAINTIFF**
**TIMOTHY MOORE**